UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TRENT WHITE,** | ) | **CASE NO.1:12CV1708** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **ALL ABOUT CABLE CONNECTIONS,** | ) | **OPINION AND ORDER** |
| **LLC, ET AL.,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff's unopposed Motion for Summary Judgment (ECF # 21).  For the following reasons, the Court grants, in part, Plaintiff's unopposed Motion.

On July 3, 2012, Plaintiff filed his Complaint against Defendants, alleging claims for violating the Fair Labor Standards Act (FLSA") and Ohio Minimum Fair Wage Standards Act. Plaintiff alleges Defendants' failed to pay Plaintiff overtime compensation of one and one-half times his regular hourly rate for hours worked beyond 40 hours in a given week, as required by law.

On October 24, 2012, the Court held a Case Management Conference attended by all

counsel and parties. The parties informed the Court they had reached a settlement and the case was removed from the active docket. Approximately two months later, Defendants' counsel motioned the Court to withdraw, which the Court granted. On January 4, 2013, Plaintiff motioned the Court to vacate the dismissal and reinstate the case. According to Plaintiff, the parties were not able to agree to a fundamental term and the case needed to be litigated. The Court granted the Motion on January 31, 2013, and scheduled a conference for February 15, 2013. Defendants failed to appear. The Court set a settlement conference for March 7, 2013, attended by Plaintiff and his counsel and Defendant Franklin Carter, appearing pro se. Defendant did not contest owing Plaintiff money and agreed to present himself for a deposition. The Court set a conference date of April 8, 2013. On March 28, 2013, Plaintiff motioned the Court to modify its Order to permit Plaintiff to serve written discovery upon Defendants in lieu of a deposition. The Court granted the Motion and Plaintiff served written discovery requests on Defendant, including Requests for Admissions. Defendant failed to respond and Plaintiff motioned the Court to have the Requests for Admissions deemed admitted, which the Court granted. On May 8, 2013, Plaintiff filed his Motion for Summary Judgment based on the admissions. Defendants failed to oppose the Motion.

The facts in support of Plaintiff's Motion, deemed admitted, are as follows: (1) Defendants employed Plaintiff from May 31, 2011 to February 17, 2012. (2) From May 31, 2011 to August 21, 2011, Defendants employed Plaintiff as a disconnect technician and from November 8, 2011 to February 17, 2012, Defendants employed Plaintiff as a quality control worker/disconnect technician. (3) During the relevant time period Plaintiff worked over 128 hours of overtime for which he was not paid the statutory rate. (4) As a result, Plaintiff is owed

$5,065.60 for overtime pay.

## LAW AND ANALYSIS

A summary judgment shall be granted only if  "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994).  The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited (by the adverse party ) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir.1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 (D.C. Cir.1990); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir.2003)(quoting *Anderson*, 477 U.S. at 251-52).

The Fair Labor Standards Act was implemented by Congress to ensure better working conditions for non-exempt workers.   At 29 U.S.C § 202, Congress stated the purpose of the FLSA as follows:

Congressional finding and declaration of policy:

> **(a)** The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce. That Congress further finds that the employment of persons in domestic service in households affects commerce.
>
> **(b)** It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

As part of this comprehensive legislation to improve working conditions in the United States, the FLSA contains a provision establishing the rate of overtime pay for non-exempt workers.  That rate requires that employers pay workers a rate of one and one-half times their regular pay rate for any time worked above 40 hours in any given work week.   This provision is

established in 29 U.S.C. §207, wherein it reads:

> (a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.
>
> **(1)** Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Here, the undisputed evidence shows Plaintiff was employed by Defendants and was entitled to the statutory overtime rate, yet, Defendants failed to pay Plaintiff the statutory overtime rate.  Therefore, the Court finds Plaintiff is entitled to $5065.60 in lost overtime compensation.  The FLSA further allows recovery for liquidated damages in the amount equal to the unpaid overtime wages.  Therefore, Plaintiff is entitled to judgment in the amount of $10,131.20.[1]

Plaintiff further seeks attorney's fees and costs as a prevailing party, as authorized by the FLSA, 29 U.S.C. § 216(b) and Ohio Minimum Wage Standards Act O.R.C. 4111.10(A).

Section 216(b) of the FLSA provides, "the court in such actions shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "An award of attorney's fees under

---

[1] The Court may reduce or eliminate liquidated damages upon a showing by the employer that a failure to pay overtime compensation was based on a good faith belief that its actions did not violate the FLSA.  See 29 U.S.C. § 260. Plaintiffs Request for Admission No. 43 (ECF #21-2) requested an admission by Defendants that there was no good faith belief or reasonable basis for denying Plaintiff overtime compensation.  Again, this Request for Admission was deemed admitted.  Therefore, the Plaintiff is entitled to liquidated damages.

FLSA § 216(b) is mandatory, but the amount awarded is within the discretion of the District Court." *Farmer v. Ottawa County*, 211 F.3d 1268 (Table) 2000 WL 420698, 7 (6th Cir. 2000) citing *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 et al. v. G & M Roofing and Sheet Metal Co. Inc.,* 732 F.2d 495, 501, (6th Cir.1984). "Since the FLSA does not discuss what constitutes a reasonable attorney fee, determination of a reasonable fee must be reached through evaluation of a myriad of factors, all within the knowledge of trial court...." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir.1994).

"Reasonable attorney's fee awards are determined by the fee applicant's lodestar amount, which is calculated by multiplying the proven number of hours worked by a court-ascertained reasonable hourly rate." *Ellison v. Balinski,* 625 F.3d 953, 960 (6th Cir.2010) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).

To further determine the reasonableness of a fee award, courts should consider the following factors:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Hensley,* 461 U.S. at 430 n. 3.[2]

---

[2]  The United States Supreme Court in  *City of Burlington v. Dague* 505 U.S. 557 (1992) has established that in most cases, the lodestar method represents a reasonable fee award.  ("We have established a "strong presumption" that the lodestar represents the "reasonable" fee, and have placed upon the fee applicant who seeks more than that the burden of showing that "such an adjustment is

Plaintiff's counsel submits his own affidavit in support of his motion for fees and costs. In his affidavit, he attests to working 47.4 hours on this case and attests to an hourly rate of $275. Thus, the lodestar calculation of fees is $13,035.  However, Plaintiff's counsel asks for an enhancement due to the risks associated with taking this case on a contingency basis.   The Court declines Plaintiff's invitation to provide such an enhancement since the United States Supreme Court has expressly proscribed such contingency case enhancements.  See *City of Burlington v. Dague* 505 U.S. 557 (1992).

The Court also notes that although Plaintiff's counsel submits his hours worked and billing rate in an affidavit, they are stated in a conclusory fashion without itemized billing records describing what services were performed and when.  This is problematic because Plaintiff's counsel acknowledges that he billed at a rate of $250/hr in 2012 and raised the rate to $275/hr in 2013.  This case was initially filed in 2012, yet there is no record of what work was performed in 2012 or 2013.  Neither is there any attestation that the rate of $275/hr is customary for counsel with Plaintiff's counsel's years and experience.   This presents a problem for the Court because it is unable to evaluate the necessity of the hours billed and whether Plaintiff's billing rate is "customary" for the type of work involved.  As one court stated,  "[t]he attorney's fee must be sufficiently documented for the court to be able to adequately evaluate it." *Williams v. Hooah Sec. Services LLC,* No. 09-2376, 2012 WL 1022187, 2 (W.D.Tenn.,March 26, 2012), citing *United Slate, Tile and Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.,* 732 F.2d 495, 502 (6th Cir.1984).

---

*necessary* to the determination of a reasonable fee." (Internal citation omitted).

However, Defendants have not opposed Plaintiff's fee request nor offered any objection to Plaintiff's fee calculation.  The Court, in considering Plaintiff's attorney's fee application has considered the above factors and finds the case before it was not novel nor did it involve particularly complicated issues.  In fact, the parties arrived at a settlement at the Case Management Conference.  Then, when the settlement broke down, Plaintiff served written discovery requests upon Defendants that went unanswered and formed the evidentiary basis for his Motion for Summary Judgment.  That Motion involves two pages of facts, law and argument on the merits of Plaintiff's claims.  The remaining ten pages are devoted to Plaintiff's arguments for attorney's fees and costs.    All militate against an enhancement.  The Court further declines to enhance Plaintiff's fee by adjusting the amount by 3% for each billable month, especially in light of the fact that counsel failed to provide an itemized break down of his work performed, including when it was performed.  Thus, awarding Plaintiff's attorney's fees via the lodestar method represents a reasonable fee in the eyes of the Court.  The Court further finds that, in its own experience, an hourly billing rate of $275/hr for an attorney with Plaintiff's counsel's years and experience is reasonable. Finally, although the attorney's fee award exceeds the amount recovered by Plaintiff on his underlying claim, this fact alone does not preclude a finding that the fee is reasonable. See, in general, *Williams* and *Fegley*.

The Court further awards Plaintiff costs in the amount of $516.80 as Plaintiff's counsel's unopposed affidavit specifically describes the costs incurred and the amounts. (ECF #21-5, ¶4).

Therefore, for the foregoing reasons, the Court grants Plaintiff summary judgment on

all Plaintiff's causes of action in the amount of $10,131.20 in compensatory and liquidated damages, attorney's fees in the amount of $13,035.00, and costs in the amount of $516.80.

IT IS SO ORDERED.

s/ Christopher A. Boyko<br>CHRISTOPHER A. BOYKO<br>United States District Judge

Dated: June 13, 2013